IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **KAISER ALUMINUM CORPORATION, a** | : | **Case No. 02-10429 (JKF)** |
| **Delaware Corporation, et al.,** | : | |
| | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | |

---

| | | |
|---|---|---|
| | : | |
| **MOSS LANDING COMMERCIAL PARK** | : | |
| **LLC, et al.,** | : | |
| | : | |
| **Appellant,** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No: 08-cv-00233 (JJF)** |
| **KAISER ALUMINUM CORPORATION AND** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Appellees.** | : | |

## Opening Brief of Appellant
## Moss Landing Commercial Park, LLC

Mark Minuti (DE Bar No. 2659)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

Thomas H. Clarke, Jr. (Cal. Bar No. 47592)
ROPERS, MAJESKI, KOHN & BENTLEY
201 Spear Street, Suite 1000
San Francisco, CA 94105
(415) 543-4800

Wendy W. Smith (Cal. Bar No. 133887)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
(408) 295-1700

*Attorneys for Appellant Moss Landing Commercial Park, LLC*

Dated: August 15, 2008

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... iii

STATEMENT OF THE CASE ................................................................................................... 1

    A.    The Controversy Involves Environmentally Sensitive Lands and Biota.............. 1

    B.    Kaiser Failed to Provide Any Notice Whatsoever to MLCP................................ 2

THE BASIS OF APPELLATE JURISDICTION ........................................................................ 3

ISSUES ON APPEAL ............................................................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 4

FACTUAL AND PROCEDURAL HISTORY ............................................................................ 5

    A.    Kaiser's Activities On The Moss Landing Property ........................................... 5

    B.    National Refractories And Kaiser Attempt to Pass The Moss
        Landing Property Back And Forth Between Them ............................................... 7

        1.    Kaiser Sells to National Refractories........................................................ 7

        2.    National Refractories Tries to get Kaiser to Buy Back
               the Property........................................................................................... 7

        3.    By Filing Bankruptcy Kaiser Avoids Having to Take Moss
               Landing Back From National Refractories............................................... 8

    C.    Moss Landing Purchases the Moss Landing Property From National
        Refractories.......................................................................................................... 9

    D.    National Refractories and Kaiser Terminate Kaiser's Environmental
        Agreement Without Notice to MLCP................................................................. 10

    E.    Kaiser Confirms a Plan of Reorganization ........................................................ 10

    F.    MLCP Files the California Action to have Kaiser Remediate the
        Contamination ................................................................................................... 10

ARGUMENT............................................................................................................................ 11

i

I.      KAISER'S FAILURE TO GIVE FORMAL NOTICE OF THE
        HEARING TO CONFIRM ITS REORGANIZATION PLAN BARS
        THE ASSERTION OF DISCHARGE OF THE CALIFORNIA ACTION ....... 11

        A.      If A Debtor Fails To Provide Actual Notice To A Known Creditor
                Of A Hearing To Confirm The Debtor's Plan Of Reorganization,
                That Creditor Is Not Bound By The Plan Or Its Injunction ................... 11

        B.      MLCP Was A Known Creditor And Kaiser Had A Duty To
                Provide Formal Notice ......................................................................... 13

        C.      Kaiser's Notice To National Refractories Did Not Provide
                Notice To MLCP .................................................................................. 15

II.     THE BANKRUPTCY COURT ERRONEOUSLY ENFORCED THE
        PLAN INJUNCTION AGAINST MOSS LANDING BECAUSE MOSS
        LANDING'S CAUSES OF ACTION FOR INJUNCTIVE RELIEF
        WERE NOT, AND MAY NOT BE, DISCHARGED IN BANKRUPTCY ...... 17

        A.      The Law Is Settled That Injunctive Relief Under RCRA And
                CWA Is Not Subject To Discharge In Bankruptcy ................................ 17

        B.      The Bankruptcy Court's Erroneous Finding Of Discharge
                Cannot Be Rescued By Reference To The "As Is" Clause In
                Moss Landing's Purchase Contract ....................................................... 21

III.    THE CONSENT DECREE DOES NOT FREE KAISER FROM
        ITS STATUTORY OBLIGATIONS TO MOSS LANDING ............................. 23

        A.      Kaiser's Failure To Give Mr. Agha Notice Of The Hearing
                On Approval Of The Consent Decree Renders The Consent
                Decree Irrelevant ................................................................................. 23

        B.      MLCP Is Not Subject To The Consent Decree In Any Event ................ 24

IV.     THIS COURT HAS JURISDICTION TO HEAR MOSS LANDING'S
        APPEAL AND REVERSE THE ERRONEOUS BANKRUPTCY
        COURT ORDER ............................................................................................. 27

        A.      This Court Has Jurisdiction To Hear This Appeal Pursuant To
                11 U.S.C. § 158(a)(1) Because The Bankruptcy Order Was Final ........ 27

        B.      The Bankruptcy Order is Final for Purpose of Appeal
                Under the Collateral Order Doctrine ..................................................... 29

CONCLUSION ...................................................................................................... 32

561047 1 8/15/08

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*AM Int'l v. Datacard Corp.,*
106 F.3d 1342 (7th Cir. 1997) .......................................................2, 18, 19, 20

*Buncher v. Official Committee of Unsecured Creditors of Genfarm Ltd. P'ship IV,*
229 F.3d 245 (3d Cir. 2000) ........................................................................27

*Chemetron Corporation v. Jones,*
72 F.3d 341 (3d Cir. 1995) .........................................................................13

*Cohen v. Beneficial Industrial Loan Corp.,*
337 U.S. 541 (1949) .........................................................................29, 30, 31

*Davenport v. Neely,*
7 F. Supp.2d 1219 (M.D. Ala. 1998).............................................................20

*Digital Equip. Corp. v. Desktop Direct Inc.,*
511 U.S. 863 (1994) ..................................................................................29

*Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko),*
515 F.3d 319 (4th Cir. 2008) ......................................................................18

*Fairview Township v. United States EPA,*
593 F. Supp. 1311 (M.D. Pa. 1984)..............................................................18

*Gilroy Canning Company, Inc. v. California Canners and Growers,*
15 F. Supp. 2d 943 (N.D. Cal. 1998).................................................21, 22, 23

*Hall v. Smith,*
260 U.S. 592 (1923) ..................................................................................13

*In re Harbor Tank Storage Co. Inc.,*
385 F.2d 111 (3d Cir. 1967) .......................................................................12

*In re J.A. Jones, Incorporated (Zurich American Insurance Corporation v. Tessler),*
492 F.3d 242 (4th Cir. 2007) ........................................................................5

*In re Jones (U.S. v. Jones),*
311 B.R. 647 (M.D. Ga. 2004) ....................................................................18

*In re Looney,*
823 F.2d 788 (4th Cir. 1987.) ...............................................................30, 31

*In re Maya Construction Company, ID (Levin v. Maya Construction),*
    78 F.3d 1395 (9th Cir. 1395) .............................................................................2, 12, 24

*In re O'Brien Envtl. Energy, Inc.,*
    188 F. 3d 116 (3d Cir 1999) ........................................................................................4

*In re Saco Local Dev. Corp.,*
    711 F.2d 441 (1st Cir. 1983) ............................................................................3, 27, 28

*In re Torwico Electronics, Inc.*
*(Torwico Electronics, Inc. v State of New Jersey, Dept. Environmental Protection),*
    8 F.3d 146 (3d Cir. 1993) ....................................................................................28, 29, 30

*In re Trans World Airlines, Inc.,*
    96 F.3d 687 (3d Cir. 1996) ........................................................................................12

*Kewanee Boiler Corp. (Oak Fabco v. American Standard Inc.),*
    297 B.R. 720 (Bankr. N.D. Ill. 2003) ..........................................................................12

*Krafczek v. Exide,*
    2007 WL 1199530 (E.D. Pa. 2007) ........................................................................20, 21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ....................................................................................................17

*Maine People's Alliance v. Mallinckrodt, Inc.,*
    471 F.3d 277 (1st Cir. 2006) ....................................................................................17

*Mason v. Massie,*
    335 B.R. 362 (N.D. Ohio) ..........................................................................................31

*Meghrig v. KFC W. Inc.,*
    516 U.S. 479 (1996) ...............................................................................................18, 20

*Middlesex County Sewerage Authority v. National Sea Climbers Association,*
    453 U.S. 1 (1981) ........................................................................................................18

*Monster Content, LLC v. Homes.com, Inc.,*
    331 B.R. 438 (N.D. Cal. 2005).....................................................................................12

*Moss Landing Commercial Park LLC v. Kaiser Aluminum Corporation, et. al.,*
    Northern District of California, Case No C07-06072.........................................................2

*Nat'l Ecological Foundation v. Alexander,*
    496 F.3d 466 (6th Cir. 2007) ......................................................................................25

iv

*New York v. New York, New Haven & Hanford RR Co.*,
    344 U.S. 293 (1953) ................................................................................2, 11, 12, 16, 24

*United States v. Hubler*,
    117 B.R. 160 (W.D. Pa. 1990),
    *aff'd*, w/o opinion, 928 F.2d 1131 ................................................................................19

*United States v. MacDonald*,
    435 U.S. 850 (1978) ................................................................................................31

*U.S. v. Witco Corp.*,
    76 F. Supp.2d 519 (D. Del. 1999) ................................................................................25

*Wiegman & Rose Int'l Corp. v. NL Industries*,
    735 F. Supp. 957 (N.D. Cal. 1990)................................................................................22

*Williams v. Vukovich*,
    729 F.2d 909 (6th Cir. 1983) ................................................................................24

*Wise v. NCD, Inc.*,
    2006 WL 3051873 (D. Ariz. 2006) ................................................................................13

## STATUTES AND RULES

Bankruptcy Rule 8013 ................................................................................................5

California Civil Code § 1428................................................................................10-11

11 U.S.C. § 101(5)(A) ................................................................................................18

28 U.S.C. § 158 ................................................................................................3

28 U.S.C. §158(c)(2) ................................................................................................27

42 U.S.C. § 6921 ................................................................................................1

42 U.S.C. § 6930 ................................................................................................1

Clean Water Act ................................................................................................passim

Resources Conservation and Recovery Act ................................................................passim

## <u>OTHER AUTHORITIES</u>

Colliers on Bankruptcy Volume 1, section 5.07[3] ........................................................ 29

## STATEMENT OF THE CASE

### A.    The Controversy Involves Environmentally Sensitive Lands And Biota.

Underlying the narrow bankruptcy issues in this appeal is Moss Landing Commercial

Park, LLC's ("MLCP") need to remediate ongoing contamination caused by the industrial waste

that Kaiser Aluminum Corporation and Kaiser Aluminum & Chemical Corporation (collectively

"Kaiser") dumped on land in Monterey California known as "Moss Landing."    Kaiser

accumulated this waste over 40 years − 5 million cubic feet of it − and then closed the site.  It

appears that the closure was timed to avoid being subject to the U.S. Environmental Protection

Agency's requirements related to landfills that are contained in the federal Resource

Conservation and Recovery Act and applicable regulations.[1]

While the true scope of the current danger is unknown, heavy metals from Kaiser's

waste, including lead, Trivalent and Hexavalent chromium, antimony, and nickel, are leaching

into drinking water resources and threatening protected wetlands, endangered and threatened

species, and the Monterey Bay National Marine Sanctuary.[2]

---

[1]    *See* 42 U.S.C. §§ 6921 and 6930.  As noted in Section 6930(a):  "Not later than ninety days after promulgation of regulations under section 3001 identifying by its characteristics or listing any substance as hazardous waste subject to this subtitle, any person generating or transporting such substance or owning or operating a facility for treatment, storage, or disposal of such substance shall file with the Administrator (or with States having authorized hazardous waste permit programs under section 3006) a notification stating the location and general description of such activity and the identified or listed hazardous wastes handled by such person."  The relevant regulations were not enacted until after Kaiser had closed the dumps.

[2]    The levels of lead, chromium, antimony, and nickel exceed regulatory standards for drinking water.   The groundwater beneath MLCP is classified as a drinking water resource by the California Regional Water Quality Control Board.  Bankr. D.I. 9671, Giffin Decl. ¶ 16, 21-24 (App. Exh. B, A-390-391, 393-395).  "App. Exh. ___" refers to the exhibits in Appendix to Opening Brief of Appellant Moss Landing Commercial Park, LLC ("Plaintiff's Appendix") filed in conjunction herewith.  Reference to pleadings filed in the bankruptcy case below are referred to herein by their Docket Number.

**B.**    **Kaiser Failed To Provide Any Notice Whatsoever To MLCP.**

It is established that "if a known contingent creditor is not given formal notice, he is not bound by an order discharging the bankruptcy's obligations." *In re Maya Construction Company, ID (Levin v. Maya Construction)*, 78 F.3d 1395, 1399 (9th Cir. 1395), citing *New York v. New York, New Haven & Hanford RR Co.*, 344 U.S. 293 (1953). Kaiser knew about this ongoing contamination well before 2001, when it filed for bankruptcy. Kaiser also knew that appellant, MLCP, bought the Moss Landing property before Kaiser confirmed its plan of reorganization (the "Plan").[3] Notwithstanding this knowledge, Kaiser never provided notice to MLCP of the hearing to confirm the Plan. The Plan makes no provision to remediate Kaiser's hazardous wastes and the ongoing soil and groundwater contamination at and from the dumps at the Moss Landing property, and attempts to discharge all of Kaiser's debts.

Even had Kaiser provided MLCP with proper notice, no bankruptcy discharge prevents an action against a reorganized debtor for injunctive relief where the remedy sought cannot be converted to a claim for money. *AM Int'l v. Datacard,* 106 F.3d 1342, 1348-9 (7th Cir. 1997). Kaiser confirmed its Plan in February 2006. MCLP has now sued Kaiser in the Northern District of California (the "California Action"[4]). The action includes claims pursuant to the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA") for injunctive relief to require Kaiser to remediate the contamination which it has created.[5] In response, Kaiser filed the Motion of Reorganized Debtors to (A) Enforce Injunctions Issued in Connection with the Second Amended Joint Plan of Reorganization and (B) Compel Moss Landing Commercial

---

[3]    As noted *infra*, Kaiser actually filed an opposition in the bankruptcy proceedings of National Refractories to the sale of the Moss Landing property to MLCP.

[4]    *Moss Landing Commercial Park LLC v. Kaiser Aluminum Corporation, et. al.,* Northern District of California, Case No C07-06072. Bankr. D.I. No. 9650, Ex. I (App. Exh. A, A-346-370).

[5]    Bankr. D.I. No. 9650, Ex. I (App. Exh. B, A-346-370).

2

Park LLC to Dismiss with Prejudice its Lawsuit Against Kaiser Aluminum Corporation and Kaiser Aluminum & Chemical Corporation[6], and obtained the order from the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") subjecting MCLP to Kaiser's bankruptcy discharge and forcing MCLP to dismiss the California Action (the "Order")[7].

MCLP appeals from the Order of the Bankruptcy Court.

## THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear appeals from final orders of the Bankruptcy Court under 28 U.S.C. § 158. Section 158(c)(2) provides that "an appeal under [this section] shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district court . . . ." A bankruptcy-court-case order may be immediately appealable if it "finally dispose[s] of discrete disputes within the larger case . . ." *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir. 1983).

MLCP appeals from the Bankruptcy Court's Order that directs MLCP to dismiss the California Action. The Order subjects MLCP's entire action to the injunction in Kaiser's confirmed Plan even though 1) MLCP never received any notice of a hearing on plan confirmation, and 2) MLCP's California Action seeks injunctive relief that cannot be barred by a reorganization plan. By making these decisions, the Bankruptcy Court has no further actions to take. The Order is final and thus subject to appeal.

---

6    Bankr. D.I. No. 9650 (App. Exh. A).

7    Bankr. D.I. No. 9690 (App. Exh. H); Bankr. D.I. No. 9713 (App. Exh. I).

561047.1 8/15/08

## ISSUES ON APPEAL

1.  Whether the Bankruptcy Court erred in issuing the Order that finds that MLCP is subject to the injunction issued in the order confirming Kaiser's Plan and commanding MLCP to dismiss the California Action?

2.  Whether the discharge and injunctive provisions of Kaiser's Plan can bind appellant MLCP, a known creditor to whom Kaiser failed to give actual notice of the hearing to confirm the Plan?

3.  Whether MLCP's causes of action filed in the California Action for remediation under RCRA and the CWA are "claims" subject to discharge under Kaiser's confirmed Plan.

4.  Whether MCLP's causes of action filed in the California Action are derivative of the claims for money held by National Refractories and Minerals Corporation ("National Refractories"), a prior owner of the Moss Landing property in Northern California?

5.  Whether Kaiser's agreement with certain environmental agencies regarding its contamination of unidentified properties precludes MCLP from bringing the California Action for remediation under the citizen-suit provisions of RCRA and the CWA?

6.  Whether the right of a private citizen to bring an action for injunctive relief under RCRA and the CWA can be converted to a claim for money subject to discharge in bankruptcy?

## STANDARD OF REVIEW

The Bankruptcy Court's legal decisions are reviewed *de novo. In re O'Brien Envtl. Energy, Inc.,* 188 F. 3d 116, 111 (3d Cir 1999). The legal decisions here include: 1) that MLCP, a known creditor to whom Kaiser failed to give actual notice of Kaiser's confirmation hearing, is bound by the injunction provisions of Kaiser's Plan; 2) that the California Action brought under the RCRA and CWA can be discharged by Kaiser's Plan even though the actions do not constitute "claims" under the Bankruptcy Code; and, 3) that Kaiser's notice to National Refractories of Kaiser's bankruptcy proceedings was adequate for purposes of notifying MLCP, even though MLCP's California Action is independent of any right held by National

4

Refractories. Mixed questions of law and fact are also reviewed *de novo*. *In re J.A. Jones, Incorporated* (*Zurich American Insurance Corporation v. Tessler*), 492 F.3d 242, 249 (4th Cir. 2007). To the extent the Bankruptcy Court is found to have made any findings of fact, they are to be reviewed for clear error. Bankruptcy Rule 8013.

## FACTUAL AND PROCEDURAL HISTORY

### A.    Kaiser's Activities On The Moss Landing Property.

The Moss Landing property is comprised of roughly 200 acres of land adjacent to Highway 1 in Moss Landing, California. From 1942 to 1984 Kaiser operated a facility for manufacturing magnesium products, including products that were used for military ordinance during World War II and refractory brick thereafter.[8] During this time Kaiser disposed of the waste from its operation by depositing said waste into two waste dumps that Kaiser created on the property. It is self-evident that the dumps were not built according to modern standards for landfills.[9] They were not lined to prevent water from leaching through the dumps[10] and were subject to rainwater intrusion through their tops for many decades. The dumps continue to be

---

[8]    Bankr. D.I. No. 9650, ¶ 12 (App. Exh. A, A-11); Refractory brick, also known as "fire brick," is used to line high-temperature facilities such as furnaces or kilns. Typically, 50% or more of a refractory brick is made of a metal oxide such as aluminum or magnesium oxide, with the remainder being silica (silicon dioxide). Other metal oxides such as chromium di- and tri-oxide can be used in the manufacture. In the case of Kaiser, chromium ore was used in manufacturing the refractory brick. Bankr. D.I. No. 9671, Giffin Decl. ¶ 10 (App. Exh. B, A-387-388); Bankr. D.I. No. 9672, Day Decl. ¶ 4 (App. Exh. C, A-413-414).

[9]    As noted previously, Kaiser closed the two dumps just in time to avoid the application of the hazardous waste landfill rules issued by EPA pursuant to RCRA.

[10]   Bankr. D.I. No. 9671, Giffin's Decl. ¶ 12 (App. Exh. B, A-389).

5

subject to surface water intrusion through their unprotected sides, and groundwater intrusion through the unprotected bottom area of the dumps.[11]

Kaiser knew of these problems as early as 1978. In a report to the EPA in 1980, Kaiser stated that "in 1978 the site[12] was noted to be producing chromium-contaminated leachate, which was being discharged into a runoff ditch along Dolan Rd." Kaiser also stated, "due to the age of this land filling area, the [lack of] regulation of waste dumping during the early period of its use, and the nature of materials historically land filled at Moss Landing, this site may contain material that would be defined by the EPA today as hazardous waste."[13]

In the early 1980's Kaiser put asphalt on ("paved over") one waste pile to limit rainwater from leaching through the top of the dump, into the waste, and then into surface and groundwater beneath and about the dump. The "caps" have now split open due to the intrusion of water into the waste dumps, exposing the contaminated waste to rain and other runoff.[14] The second waste pile was only partially capped by Kaiser.[15] Neither of the two waste dumps could be lined retroactively to prevent surface water, groundwater, or rainwater from flowing through the bottom of the dumps and thereby further contaminating groundwater and surface water resources.

---

[11]    Bankr. D.I. No. 9671, Giffin Decl. ¶¶ 11, 13, 15 (App. Exh. B, A-388-390).

[12]    In the 1980 filing with the EPA, the term "site" meant the two waste dumps.

[13]    Bankr. D.I. No. 9672, Day Decl. ¶ 4 (App. Exh. C, A-413-414).

[14]    Bankr. D.I. No. 9672, Day Decl. ¶ 5 (App. Exh. C, A-414).

[15]    Bankr. D.I. No. 9672, Day Decl. ¶ 5 (App. Exh. C, A-414).

**B.      National Refractories And Kaiser Attempt To Pass The Moss Landing Property Back And Forth Between Them.**

     **1.      Kaiser Sells to National Refractories.**

In December 1984, Kaiser sold the Moss Landing property to National Refractories and retained a lien on the land.[16]   The sale included an "Environmental Agreement" allocating responsibility for responding to environmental liability between the parties.[17]   The Environmental Agreement reveals that Kaiser was well aware that there were ongoing environmental issues at Moss Landing.   It required National Refractories to maintain "the existing closed brick plant waste dumps" and to maintain the "leachate collection system and continue to process leachate as presently processed...."   It further required National Refractories to take affirmative action in "re-routing storm drains around the dump and to close off the present drain."[18]

The Environmental Agreement, however, specifically relieved National Refractories from any obligation to replace the "existing surface covers [of the dumps] at the end of their useful lives."[19]   Thus, Kaiser clearly knew that, even if the mere paving over of the waste dumps was adequate at the time it was done (which it was not), it was not a permanent solution, and Kaiser, not National Refractories, would have to pay to fix it when it ultimately failed.

     **2.      National Refractories Tries to get Kaiser to Buy Back the Property.**

After National Refractories operated the refractory business for several years, it attempted to sell the Moss Landing property back to Kaiser.   In September 2001, they executed a

---

[16]   Bankr. D.I. No. 9650, ¶ 13 (App. Exh. A, A-11-12).

[17]   Bankr. D.I. No. 9650, ¶ 14 and Ex. B (App. Exh. A, A-12-13, 49-73).

[18]   Bankr. D.I. No. 9650, Ex. B, p. 7, ¶ 3.1.1 (App. Exh. A, A-55).

[19]   Bankr. D.I. No. 9650, Ex. B ¶ 3.1.1(a) (App. Exh. A, A-55).

7

contract (the "Put/Call Agreement") giving National Refractories an option to require Kaiser to buy Moss Landing.[20]

Kaiser again acknowledged the ongoing environmental problems at Moss Landing. The Put/Call Agreement requires National Refractories to create an escrow account of $1.5 million upon the execution of the agreement. The money was to be paid to Kaiser upon Kaiser's purchase of the property "to assist in the payment of environmental liabilities, if any, which Kaiser may pay with respect to the recycle pile on the property and to provide and maintain caps on the landfills on the property . . . ."[21] Thus, in 1990, Kaiser was aware of the hazard posed by the waste dumps and of the continuing deterioration of the stop-gap environmental remedies it had placed upon the Moss Landing waste dumps.

### 3. By Filing Bankruptcy Kaiser Avoids Having to Take Moss Landing Back From National Refractories.

In October 2001 all of the National Refractories entities filed for bankruptcy protection in the Northern District of California pursuant to Chapter 11 of the Bankruptcy Code. In November 2001, National Refractories moved the California Bankruptcy Court to approve its exercise of the Put/Call Agreement requiring Kaiser to buy Moss Landing back.[22] In February 2002, before the proposed order regarding National Refractories' motion to exercise the Put/Call could be granted, Kaiser filed its own petition for Chapter 11 bankruptcy protection in Delaware.[23] In March 2002 the California Bankruptcy Court granted National Refractories' motion to force Kaiser to buy the Moss Landing property. In April 2002 Kaiser filed a motion in its bankruptcy case asking the Delaware Bankruptcy Court to allow Kaiser to avoid its contractual obligation to

---

[20]    Bankr. D.I. No. 9650, ¶ 17 (App. Exh. A, A-14).

[21]    Bankr. D.I. No. 9650, Ex. C, p. 3, ¶ 6(b) (App. Exh. A, A-77).

[22]    Bankr. D.I. No. 9650, ¶ 19 (App. Exh. A, A-14-15).

[23]    Bankr. D.I. No. 9650, ¶ 6 (App. Exh. A, A-10).

561047.1 8/15/08

re-purchase the Moss Landing property. That motion was granted in June 2002, leaving National Refractories with the property.[24]

Thereafter, Kaiser and National Refractories filed dueling proofs of claim in each others' bankruptcy actions.[25]

## C.    Moss Landing Purchases the Moss Landing Property From National Refractories.

In October 2003, Nader Agha, MLCP's predecessor-in-interest, signed an agreement to buy the Moss Landing property from National Refractories.[26] The agreement did not include the purchase of any claim that National Refractories may have had against Kaiser. National Refractories did promise Nader Agha that "sellers [National] shall be responsible for enforcing any [Kaiser] indemnification obligation, and shall indemnify and defend buyer in connection therewith . . . ."[27]

In October 2003 National Refractories filed a motion to approve the sale of the Moss Landing property to Mr. Agha. Kaiser, who held a security interest in the Moss Landing property, opposed the motion. Kaiser did not serve its opposition to the sale on Mr. Agha, nor was Mr. Agha ever informed of the opposition.[28] The California Bankruptcy Court approved the sale in November 2003, and Mr. Agha used MLCP to take possession of the property in December 2003.[29]

---

[24]    Bankr. D.I. No. 9650, Ex. A, Donnan Decl. ¶ 10 (App. Exh. A, A-38).

[25]    Bankr. D.I. No. 9650, Ex. A, Donnan Decl. ¶¶ 11, 12 (App. Exh. A, A-39).

[26]    Bankr. D.I. No. 9650, Ex. F (App. Exh. A, A-240-333).

[27]    Bankr. D.I. No. 9650, Ex. F (App. Exh. A, A-240-333).

[28]    Bankr. D.I. No. 9674, Agha Decl. ¶ 3 (App. Exh. E, A-496-497).

[29]    Bankr. D.I. No. 9650, Ex. A, Donnan Decl. ¶ 19 (App. Exh. A, A-42).

**D.    National Refractories and Kaiser Terminate Kaiser's Environmental Agreement Without Notice to MLCP.**

In March 2004, just three months after MLCP took possession of Moss Landing, Kaiser and National Refractories settled their claims against each other in the California and Delaware bankruptcy actions, and National Refractories terminated Kaiser's indemnification obligations under the Environmental Agreement.[30]  Both National Refractories and Kaiser knew that MLCP owned the Moss Landing property at the time.  There is no question that MLCP was a party in interest, as the proposed settlement purported to relieve Kaiser of environmental responsibilities regarding the Moss Landing property and its two waste dumps.  Notwithstanding this, neither National Refractories nor Kaiser gave notice to MLCP of their settlement agreement.[31]

**E.    Kaiser Confirms a Plan of Reorganization.**

In February 2006, the Delaware Bankruptcy Court entered an order confirming the Kaiser Plan, which became effective on July 6, 2006.[32]  Although Kaiser knew that MLCP had owned the Moss Landing property for more than a year, the Court's records reflect that no notice of the confirmation hearing was ever served on either MLCP or on Nader Agha, and in fact neither received notice.[33]  Kaiser has never asserted such notice was given.

**F.    MLCP Files the California Action to have Kaiser Remediate the Contamination.**

In December 2007, MLCP filed the California Action stating causes of action for violation of the CWA and RCRA, continuing public and private nuisance *per se*, negligence *per se*, declaratory relief, equitable indemnity and contribution, violation of California Civil Code

---

[30]    Bankr. D.I. No. 9650, Ex. A, Donnan Decl. ¶ 25 (App. Exh. A, A-44-45).

[31]    Bankr. D.I. No. 9674, Agha Decl. ¶ 3 (App. Exh. E, A-496-497).

[32]    Bankr. D.I. No. 9650, ¶ 9 (App. Exh. A, A-10-11).

[33]    Bankr. D.I. No. 9674, Agha Decl. ¶ 4 (App. Exh. E, A-497); Bankr. D.I. No. 9673, Smith Decl. ¶¶ 3-19 (App. Exh. D, A-453-456).

§ 1428, and breach of contract.[34]  All of the Federal causes of action and nearly all of the State causes of action seek injunctive relief.

On December 28, 2007, Kaiser filed the motion to enforce the Bankruptcy Court injunctions in the Bankruptcy Court. The Kaiser motion made a single argument, that the Moss Landing lawsuit "violates the [reorganization] plan and confirmation order injunctions."[35]  After a hearing on February 25, 2008, the Bankruptcy Court entered the Order directing MLCP to dismiss the California Action.[36]  This Court entered an order to stay the effect of the Bankruptcy Court Order on April 21, 2008.[37]

## ARGUMENT

## I. KAISER'S FAILURE TO GIVE FORMAL NOTICE OF THE HEARING TO CONFIRM ITS REORGANIZATION PLAN BARS THE ASSERTION OF DISCHARGE OF THE CALIFORNIA ACTION

### A. If A Debtor Fails To Provide Actual Notice To A Known Creditor Of A Hearing To Confirm The Debtor's Plan Of Reorganization, That Creditor Is Not Bound By The Plan Or Its Injunction.

A Chapter 11 debtor has an affirmative duty to provide actual notice to a known creditor before any order can operate to discharge an obligation to that creditor. *New York v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 293 (1953).  In the U.S. Supreme Court case of *New York, Id.*, the City of New York held liens against a debtor's assets but had not received the notice of hearing to confirm a debtor's plan, which eliminated the city's claim entirely. The debtor argued that notice by publication was adequate since the City of New York was aware of the bankruptcy. The Court stated:

---

[34]  Bankr. D.I. No. 9650, Ex. I (App. Exh. A, A-346-370).

[35]  Bankr. D.I. No. 9650, ¶ 19 (App. Exh. A, A-14-15).

[36]  Bankr. D.I. No. 9690 (App. Exh. H, A-547-548).

[37]  This Court's stay issued after the parties' designation and counter-designation of the record.

> Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best. *See Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306 ... . But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication. . . . The case here is different. No such excuse existed to justify subjecting New York's claims to the hazard of forfeiture arising from "constructive notice" by newspaper. . . . Creditors who have a knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given to them before their claims are ever barred.

*New York v. New York, NH and HR Co.,* 344 U.S. at 296-297.

In *Monster Content, LLC v. Homes.com, Inc.,* 331 B.R. 438 (N.D. Cal. 2005), the debtor learned of a potential claimant alleging infringement on licensing rights "shortly before [the debtor] filed its proposed plan and obtained its confirmation order". *Id* at 442. The Bankruptcy Court held that, even though the creditor was aware of the bankruptcy proceeding, the claim was not discharged because the debtor failed to provide the creditor "with any notice of the proposed plan of reorganization, any notice of the claims bar date, or any notice of the motion, hearing date or order of confirmation." *Id* at 443. S*ee also In re Trans World Airlines, Inc.,* 96 F.3d 687, 690 (3d Cir. 1996) [post-petition, pre-confirmation defamation claim not discharged where claimant did not receive formal notice of confirmation hearing], *In re Maya Construction Company ID (Levin v. Maya Construction),* 78 F.3d 1395, 1399 (9th Cir. 1995) [creditor's actual knowledge of bankruptcy *proceeding* did not relieve debtor of obligation to give notice of bankruptcy *hearings*], and *In re Harbor Tank Storage Co. Inc.,* 385 F.2d 111, 115-116 (3d Cir. 1967) [publication of notice in newspaper does not satisfy statutory notice requirement as to known contingent creditor].

Furthermore, a creditor whose debt is not discharged cannot be compelled to participate in a confirmed plan where it was given no opportunity to object to it. In *Kewanee Boiler Corp. (Oak Fabco v. American Standard Inc.),* 297 B.R. 720 (Bankr. N.D. Ill. 2003), the court stated

12

that a debtor should not be allowed to extend a claims-bar date for the purpose of adding an unnoticed creditor in order to subject that creditor to the limitations of the confirmed plan.[38]

Kaiser has never asserted that it gave either Mr. Agha or MLCP formal notice of the hearing on the confirmation of Kaiser's Plan. Nor do the records of the case reflect such notice was given.[39] Neither Mr. Agha nor MLCP received such notice.[40] Kaiser, therefore, bears the burden to establish that Kaiser's published notice was adequate. Kaiser has not met this burden. *See e.g., Hall v. Smith* 260 U.S. 592, 595 (1923), (relating to a liquidation under the Bankruptcy Act of 1898, and addressing establishing actual knowledge of the bankruptcy.) The District Court of Arizona discussed the issue in detail in its unpublished decision *Wise v. NCD, Inc.,* 2006 WL 3051873 (D. Ariz. 2006), holding that the Chapter 11 debtor had the burden to prove that notice by publication was adequate.

## B.   MLCP Was A Known Creditor And Kaiser Had A Duty To Provide Formal Notice.

Notice of bankruptcy proceedings by publication may be found adequate where a creditor or its claim is not "reasonably ascertainable by the debtor." *Chemetron Corporation v. Jones,* 72 F.3d 341, 345 (3d Cir. 1995). "A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts . . ." *Chemetron,* 72 F.3d at 346. While reasonable diligence does not require "impracticable and extended searches . . . in the name of due process" it does require, at a minimum a "careful examination" of the "debtor's own books and resources". *Chemetron,* 72 F.3d at 346-347.   Kaiser has never disputed that it knew

---

[38]   In that case, the creditor chose to participate in the plan, thereby waiving its right to object to the continued date to add late claims.

[39]   Bankr. D.I. No. 9673, Smith's Decl. (App. Exh. D, A-453-495).

[40]   Bankr. D.I. No. 9674, Agha Decl. ¶¶ 3, 4 (App. Exh. E, A-496-497).

Mr. Agha's identity or that MLCP ultimately purchased the property. Rather, the only argument Kaiser made is that Kaiser had no reason to know that MLCP had a claim against it.

As a preliminary matter, Kaiser provided no evidence to the Bankruptcy Court that it made any effort to examine its records to identify likely environmental claims or claimants. Nor does the single declaration that Kaiser did provide deny that Kaiser knew, or at least suspected, that MLCP had a claim against it.[41] Thus, Kaiser has not met its burden to support its argument that its published notice was adequate to notify MLCP of the plan-confirmation-hearing.

In fact, Kaiser did not have to look any further than its contacts with National Refractories to know that any subsequent owner of Moss Landing had a claim against it. First, Kaiser knew that it had left 5 million cubic feet of hazardous waste on the Moss Landing property, and knew that chemicals leached from the waste dumps and traveled off property.[42] Common sense, and a brief review of the environmental history of the property, would have revealed to Kaiser that the waste dumps had been created over a span of 40 years and thus could not, and did not, comply with modern standards that are designed to contain leachate releases and discharges, such as happened in 1978.

Kaiser further knew that the "useful life" of the paving it placed on the larger of the two waste dumps in 1980 was limited, and that ultimately the caps would need to be replaced. This knowledge is reflected in its Environmental Agreement with National Refractories in which Kaiser released National Refractories from any obligation to "replac[e] existing surface covers at the end of their useful lives."[43] Kaiser's knowledge is again reflected in the Put/Call Agreement with National Refractories in which Kaiser demanded a $1.5 million dollar escrow account in

---

41   Bankr. D.I. No. 9650 (App. Exh. A).

42   Bankr. D.I. No. 9650, Ex. B, Environmental Agreement ¶ 3.1.1. (App. Exh. A, A-55-57).

43   Bankr. D.I. No. 9650, Ex. B, ¶ 3.1.1.(a) (App. Exh. A, A-55).

14

order to "assist in the payment of Environmental liabilities . . . and to provide and maintain caps on the land fills . . ."[44]  By knowing that the meager provisions Kaiser had provided for containing the contamination it created were deteriorating, Kaiser must have known that the toxic leachate identified in the 1980 filing would cause a future problem.

Finally, Kaiser is deemed to know the law, particularly, the provision of RCRA that provides that any person may bring a civil action against anyone, including any past generator of waste, "who has contributed ... to past or present ... storage ... or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."[45]  Kaiser knew that MLCP owned the land containing the Kaiser wastes, knew that Kaiser's prior remedies to limit the toxic leachate from impacting the environment were of questionable effectiveness, and knew that "caps" atop the waste dumps were deteriorating.  It, therefore, knew that the contamination would continue to leach into the groundwater and nearby surface waters, and that MLCP would have a claim under at least RCRA and CWA[46] to require Kaiser to remediate that contamination. Kaiser, therefore, cannot in good faith deny that, prior to the confirmation of its reorganization plan, it knew that MLCP was a creditor and entitled to actual notice of the plan hearing.  Indeed, Kaiser has never denied this knowledge.[47]

## C.     Kaiser's Notice To National Refractories Did Not Provide Notice To MLCP.

Kaiser argued that the formal notices it gave to National Refractories operated as constructive notice to MLCP of a confirmation hearing, thereby making the confirmed Plan

---

[44]     Bankr. D.I. No. 9650, Ex. C, ¶ 6.(a) (App. Exh. A, A-77).

[45]     42 U.S.C. § 6972(a)(1)(B).  See a similar provision in the CWA:  33 U.S.C. § 1365(a)(1).

[46]     The dumps discharged leachate through a point source into the adjacent wetlands, which requires an NPDES permit, a permit Kaiser never sought or obtained.

[47]     Bankr. D.I. No. 9650, Ex. A (App. Exh. A, A-34-47).

binding on MLCP.[48]  This contradicts the Supreme Court ruling in *New York v. New York, New Haven and Hartford* which held that constructive notice of a confirmation hearing to a known creditor by publication is inadequate.

Kaiser also argued that its notice to National Refractories was adequate because National Refractories filed a proof of claim in Kaiser's case that included a claim for money "in respect of the Moss Landing Property."[49]  Kaiser stated "[Kaiser] resolved the *Moss Landing claim* with, and served notice of the confirmation hearing on, the only party that asserted the claim in their chapter 11 cases." (emphasis added)[50]  The essential flaw in this position is Kaiser's assumption that there was a single "Moss Landing claim," and that it was entirely encompassed in the proof of claim filed by National Refractories.  Kaiser argues that National Refractories' proof of claim was the basis of the MLCP claims against Kaiser.  This, indeed, appears to be the conclusion reached by the Bankruptcy Judge as well.[51]  The Bankruptcy Judge stated: "to the extent that National Refractories had the proof of claim of record and was served, and your client [MLCP] did nothing to get that proof of claim transferred into its own name, the debtors served the entity that had filed the proof of claim I believe that's what's required."

This conclusion could only be reached by finding National Refractories' proof of claim for money owed pre-petition is identical to MLCP's current claim for injunctive relief to require Kaiser to remediate the "imminent and substantial endangerment" to the environment.[52]  MLCP's complaint against Kaiser arises solely from its ownership of the land itself.  It is the

---

48    Bankr. D.I. No. 9675, ¶ 2 (App. Exh. F, A-499-500).

49    D.I. No. 9675, ¶ 2 (App. Exh. F, A-499-500).

50    D.I. No. 9675, ¶ 2 (App. Exh. F, A-499-500).

51    D. I. No. 9679, TR. p. 37, ln. 6 (App. Exh. G, A-540).

52    42 U.S.C. § 6972(a)(1)(B).

561047.1 8/15/08

independent right of a land-owner to have a previous generator of waste remediate ongoing contamination caused by that waste.

RCRA claims are, by their very nature, temporally unique and immediate, based on the existence of an "imminent and substantial endangerment" to the environment existing when the RCRA claim is raised.[53]   RCRA claimants must demonstrate a concrete and particularized injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Thus, prior claims by other parties, even where subjected to adjudication and remedy, do not speak to a plaintiff's standing "as of the present time." *Maine People's Alliance v. Mallinckrodt, Inc.*, 471 F.3d 277, 284 (1st Cir. 2006). The First Circuit Court of Appeals has characterized attempts to bar RCRA claims based on prior adjudication by other parties as "sleight of hand" and "verg[ing] on the specious." *Id.* at 283-284.   MLCP's claims against Kaiser for ongoing environmental contamination and a present imminent and substantial endangerment to the environment are entirely distinct from any pre-petition claim National Refractories might have held. In light of MLCP's independent claim, it was entitled to receive formal notice of Kaiser's plan-confirmation hearing.

## II.    THE BANKRUPTCY COURT ERRONEOUSLY ENFORCED THE PLAN INJUNCTION AGAINST MOSS LANDING BECAUSE MOSS LANDING'S CAUSES OF ACTION FOR INJUNCTIVE RELIEF WERE NOT, AND MAY NOT BE, DISCHARGED IN BANKRUPTCY

### A.    The Law Is Settled That Injunctive Relief Under RCRA And CWA Is Not Subject To Discharge In Bankruptcy.

The Bankruptcy Court erred in finding that MLCP's claim was subject to the Kaiser Plan injunction because MLCP's causes of action for injunctive relief under the RCRA and the CWA

---

[53]    42 U.S.C. § 6972(a)(1)(B).

are not subject to discharge in bankruptcy. [54] When a Bankruptcy Court order erroneously finds a claim to have been discharged, this Court will properly reverse that order. *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 322 (4th Cir. 2008). Because injunctive relief under RCRA and CWA are *not* dischargeable in bankruptcy, the Bankruptcy Court's order was erroneous and should be reversed.

As noted by the U.S. Supreme Court, injunctive relief under RCRA is not a "claim" subject to bankruptcy discharge because RCRA does not permit suit for monetary damages in lieu of injunctive relief. *Meghrig v. KFC W. Inc.*, 516 U.S. 479, 487-488 (1996). A cause of action seeking injunctive relief is not a "claim" to be discharged in bankruptcy unless the same cause of action would permit monetary relief as an alternative. 11 U.S.C. § 101(5)(A). Thus, injunctive relief under RCRA is not discharged because it does not allow a party forced to clean up a site to sue for those response costs in lieu of seeking an injunction. *Meghrig*, 516 U.S. at 487-488. The same is true for injunctive relief under the CWA. *Fairview Township v. United States EPA*, 593 F. Supp. 1311, 1315 (M.D. Pa. 1984), citing *inter alia Middlesex County Sewerage Authority v. National Sea Climbers Association*, 453 U.S. 1, 14-18 (1981) ["[m]onetary damages are not available under the Clean Water Act . . ."]; *see also In re Jones (U.S. v. Jones)*, 311 B.R. 647, 655-56 (M.D. Ga. 2004) ["civil penalties under both subsections of the Clean Water Act are nondischargeable in bankruptcy."]. The discharge Kaiser received from the Bankruptcy Court therefore does not apply to the injunctive relief Moss Landing seeks in the California Action. *AM Int'l v. Datacard Corp.*, 106 F.3d 1342, 1348-1349 (7th Cir. 1997).

The fact that a debtor may be required to *spend* money to comply with a RCRA or CWA injunction does not mean that such injunctions are subject to discharge in bankruptcy. *United*

---

[54]    These are the first, second, and third causes of action in MLCP's first amended complaint.

*States v. Hubler,* 117 B.R. 160, 164 (W.D. Pa. 1990), *aff'd,* w/o opinion, 928 F.2d 1131.  To the

contrary, mandatory injunctive relief is not discharged unless it can be converted into a claim for

monetary damages, a principle that has its origins in the Supreme Court decision of *Ohio v.*

*Kovacs*:

> The issue of whether an equitable order requiring a party to engage
> in affirmative acts to clean up the environment gives rise to a right
> to payment, and is thus dischargeable, was considered by the
> Supreme Court in *Ohio v. Kovacs,* 469 U.S. 274 (1985). . . .  The
> *Kovacs* Court determined that where a state attempts to recover
> clean-up costs from a polluter, this type of debt is dischargeable....
> However, the Court repeatedly emphasized that it's holding is
> limited to situations where a clean up order is 'converted into an
> obligation to pay money'.

*Hubler,* 117 B.R. at 163.

The Court of Appeals in the Seventh Circuit previously considered, and flatly rejected,

the notion that mandatory injunctive relief under RCRA could be discharged in bankruptcy. *AM*

*Int'l,* 106 F.3d at 1348-1349.  In *AM Int'l v. Datacard*, the debtor seeking to enforce a discharge

in bankruptcy had polluted a piece of real property "[f]or nearly 25 years." *Id.* at 1345.  A

"subsequent purchaser of the site" sued, *inter alia,* for injunctive relief under RCRA. *Id.* at

1346.   The District Court ruled that the claims for injunctive relief survived bankruptcy

discharge, and the Seventh Circuit affirmed. *Id.*

The Seventh Circuit began by stating the general rule "[w]hether a cleanup order can be

discharged in bankruptcy depends on whether the order can be converted into a monetary

obligation." *Id.*  The Court continued, "[t]he question is, then, can [the Defendant] convert the

district court's [cleanup] order into a right to payment?  The answer to that question is no." *Id.*

The reason, as the Court noted, is that the Supreme Court had already held that RCRA does not

19

allow a party to convert a claim for mandatory injunction to a claim for response costs. *Id.*, citing *Meghrig*, 516 U.S. at 487-488.[55]

The *AM Int'l* decision makes clear that Kaiser's motion to enforce its bankruptcy discharge against Moss Landing should have been denied. As in *AM Int'l*, Kaiser - the party discharged in bankruptcy - having polluted the Moss Landing site for decades, sought to dismiss the complaint of a subsequent purchaser (MLCP), arguing that the complaint was discharged along with all other "claims" as defined in the Bankruptcy Code. As in *AM Int'l*, MLCP's complaint includes causes of action under RCRA and CWA for mandatory injunction, which cannot be converted into suit for monetary relief. MLCP respectfully submits that, as in *Am Int'l*, the Court should find that MLCP's RCRA and CWA causes of action (and any cause of action seeking injunctive relief, to the extent it does so) have not been discharged, and the Bankruptcy Court's ruling to the contrary was erroneous as a matter of law, and should be reversed.

Contrary to the plain language of the *Am Int'l* decision, in the Bankruptcy Court, Kaiser argued that only government claims for injunctive relief survive bankruptcy. Kaiser's argument relied on a single, brief decision inconsistent with the detailed, Seventh Circuit opinion in *AM Int'l.*, 106 F.3d at 1342. *See* Bankr. D.I. No. 9650, Motion, p. 23 (App. Exh. A, A-28), citing *Krafczek v. Exide,* 2007 WL 1199530 (E.D. Pa. 2007). *See also Davenport v. Neely,* 7 F. Supp.2d 1219, 1233 (M.D. Ala. 1998) (holding citizen-suit to mandate reorganized debtor to remediate contamination not discharged under 11 U.S.C. § 1141.) Kaiser did not, and cannot, reconcile the unpublished decision in *Exide* with either *AM Int'l* or the Supreme Court decision in *Meghrig*, both of which concerned non-governmental causes of action for injunctive relief.

---

[55]    This analysis applies to all of MLCP's causes of action to the extent they seek injunctive relief.

The *Exide* ruling also profoundly misapprehends the statutory provisions for standing under RCRA. The ruling says, "A state can exercise its regulatory power and force compliance with its law; but individual plaintiffs may not." *Exide*, 2007 WL 1199530 at 3. This is directly contrary to the provisions in RCRA (42 U.S.C. § 6972(a)(1)(A) and (a)(1)(B)) as well as that for the Clean Water Act. (33 U.S.C. § 1365(a)(1)), both of which expressly provide for citizen suits to "enforce compliance" with state and Federal law, as well as seeking, *via* injunction, the remediation of a contaminated site. Kaiser provides no legal authority to justify treating an action for injunction as a "claim" under the Bankruptcy Code other than the highly flawed *Exide* "decision."

## B.    The Bankruptcy Court's Erroneous Finding Of Discharge Cannot Be Rescued By Reference To The "As Is" Clause In Moss Landing's Purchase Contract.

Kaiser cannot rescue the Bankruptcy Court's erroneous enforcement of the discharge injunction by claiming that the "as is" clause in MLCP's purchase agreement with National Refractories relieved Kaiser from any liability.[56]  The argument is contrary to Federal law.  In *Gilroy Canning Company, Inc. v. California Canners and Growers*, 15 F. Supp.2d 943, 946 (N.D. Cal. 1998), the District Court for the Northern District of California rejected the notion that a RCRA cause of action can be barred with an "as is" clause in a purchase agreement.  In *Gilroy*, the named plaintiff bought property in 1983 from a company that had bought it from the defendant, who went into bankruptcy the following year.  *Id.* at 944.  When the State of California ordered Gilroy Canning to investigate and remediate contamination on the site, Gilroy Canning performed two years of work characterizing the problem.  *Id.*  Gilroy Canning then sued

---

[56]    *See* Bankr. D.I. No. 9650, Motion ¶ 48 (App. Exh. A, A-29).

the original owner, still in bankruptcy, alleging a single claim for injunctive relief under RCRA, mandating that the bankrupt seller complete preparation of, and execute a remediation plan. *Id.*

The original bankrupt owner moved for summary judgment, arguing that Gilroy Canning had bought the property "as is" from the interim owner, and therefore had no claim against the original owner. *Id.* at 945-946. The Court rejected this, beginning by noting that (as with Mr. Agha/MLCP and Kaiser), there was no contractual privity between the original owner and Gilroy canning, the Plaintiff. *Id.*

The Court then rejected the notion that the "as-is" language in the purchase contract could prevent RCRA relief, even if there had been contractual privity between the parties. *Id.* at 946. The Court noted that the "as is" clause was "standard, boiler-plate language used in every contract for the transfer of property . . .:" which would "circumvent both the intent and language" of environmental statutes if the Defendant's assertion prevailed. *Id.*, quoting *Wiegman & Rose Int'l Corp. v. NL Industries*, 735 F. Supp. 957 (N.D. Cal. 1990). The Court concluded that, "the 'as is' clause is preempted by RCRA and therefore is unenforceable." *Id.* (emphasis added).

This policy-driven decision applies with equal force to the facts of this action. As in *Gilroy*, Kaiser contracted with a third party (National Refractories) for sale of the property, covenanting with the third party that the property would transfer "as is."[57] As in *Gilroy*, the party seeking injunctive relief under RCRA (MLCP) was not a party to the original Kaiser-National Refractories property transfer.[58] As in *Gilroy*, Kaiser's argument that it can avoid statutory obligations to characterize and remediate contamination that it caused based on having sold the property "as is" does violence to the public policy underlying a statutory environmental

---

[57]    Bankr. D.I. No. 9650, *see* ¶¶ 42, 48 (App. Exh. A, A-25-26, 29).

[58]    Bankr. D.I. No. 9650 (App. Exh. A).

22

scheme enacted to impose the very obligation which Kaiser claims to have contracted away. *Gilroy Canning*, 15 F. Supp.2d at 946. Simply, the public policy favoring remediation of environmental injury by those who created and operated the waste dumps trumps the ability of parties to contract away their responsibility with boilerplate "as is" language in property contracts.

## III.    THE CONSENT DECREE DOES NOT FREE KAISER FROM ITS STATUTORY OBLIGATIONS TO MOSS LANDING

### A.    Kaiser's Failure To Give Mr. Agha Notice Of The Hearing On Approval Of The Consent Decree Renders The Consent Decree Irrelevant.

Kaiser argued to the Bankruptcy Court that it was not liable for its contamination of Moss Landing because it entered into a consent decree with various governmental agencies in 2003 (the "Consent Decree"). The Consent Decree affects a range of properties Kaiser had left contaminated but does not mention Moss Landing or make any provision for it. As a preliminary matter, the argument Kaiser makes here is not that Kaiser's liability was discharged through the Plan, or that MLCP's action should be enjoined by the Plan. At best, it is an affirmative defense to the California Action. Thus, the argument is irrelevant to Kaiser's motion to enforce its injunction. It should not have been considered by the Bankruptcy Court and need not be considered here.

Kaiser, furthermore, never gave Mr. Agha notice of the hearing to have the Bankruptcy Court approve the Consent Decree. To the contrary, in the agreement between Mr. Agha and National Refractories for the sale of Moss Landing, National Refractories represents to Mr. Agha that "Seller has not: (i) entered into or been subject to any consent decree. . . with respect to the

23

Real Property. . . ."[59]  This representation was made on October 3, 2003, eight weeks after Kaiser sent National Refractories notice of the Consent Decree that Kaiser now claims affects the MLCP property.[60]

To the extent that Kaiser was attempting to claim that the Bankruptcy Court's approval of the Consent Decree barred the California Action, the argument must fail. As set forth in *New York v. New York, N.H. & H.R. RR*, 344 U.S. at 296-297, a court's order cannot affect the rights of a known party who is not given actual, formal notice of the proceedings affecting their interests. The Consent Decree, therefore, cannot be used to cause a discharge in bankruptcy. *See, e.g., In re Maya Construction Company ID (Levin v. Maya Construction,* 78 F.3d at 1399.

In Bankruptcy Court, Kaiser suggested that, because Nader Agha was "conducting due diligence" on the Property while Kaiser's motion to approve the Consent Decree was pending, he had some duty to discover the pending consent decree proceedings.[61]  This argument is exactly contrary to the law that requires that Kaiser give Mr. Agha notice because Kaiser knew that he was a contingent claimant. However, as stated above, Kaiser did not give Mr. Agha notice that a motion to approve the Consent Decree would be heard.[62]

## B.    MLCP Is Not Subject To The Consent Decree In Any Event.

The Consent Decree by its own terms does not affect MLCP's rights against Kaiser. A consent decree "should be strictly construed to preserve the bargained for position of the parties." *Williams v. Vukovich*, 729 F.2d 909, 920 (6th Cir. 1983). This principle specifically

---

[59]    Bankr. D.I. No. 9650 (Motion, Ex. F, Agreement of Purchase and Sale, p. 21, italics added.) (App. Exh. A, A-208).

[60]    Bankr. D.I. No. 9650, Ex. F, Agreement of Purchase and Sale, p. 21 (App. Exh. A, A-208).

[61]    Bankr. D.I. No. 9650, ¶¶ 42, 48 (App. Exh. A, A-25-26, 29).

[62]    Bankr. D.I. No. 9674, Agha Decl. ¶ 4 (App. Exh. E, A-497).  The fact is that Mr. Agha did not know about the Consent Decree until Kaiser described it in the current motion. Bankr. D.I. No. 9674, Agha Decl. ¶¶ 3, 4 (App. Exh. E, A-496-497).

applies in the context of environmental litigation. *See U.S. v. Witco Corp.*, 76 F. Supp.2d 519, 526 (D. Del. 1999). Interpreting a consent decree to reach beyond the intent appearing in its language is error, reversible on appeal. *Nat'l Ecological Foundation v. Alexander*, 496 F.3d 466, 480-481 (6ᵗʰ Cir. 2007). Nothing in the Consent Decree suggests any intent to limit any right of the private party who is a stranger to the contract.

First, the Moss Landing property does not qualify under any of the definitions of properties expressly covered by the Consent Decree ("Debtor-Owned Sites", "Liquidated Sites", and "Discharged Sites")[63], either because 1) the general descriptive definition of the terms does not reach the Moss Landing property or 2) because the Moss Landing property does not appear in the *list* of sites that the Decree says these terms cover.[64]

Second, nothing in the Consent Decree purports to bar claims for injunctive relief under RCRA or CWA.[65] Even if the term "Additional Sites" could be interpreted to include the two waste dumps on the Moss Landing property,[66] nothing in the Consent Decree limits or constrains the ability of MLCP to sue the Debtor pursuant to RCRA (42 U.S.C. § 6972(a)(1)) for the contamination created by the waste dumps on the Moss Landing property.[67] Similarly, nothing in the Consent Decree limits or constrains any cause of action under the Clean Water Act (33 U.S.C. §§ 1311 and 1342) for failure to comply with the permit, treatment system, and lack of pollution requirements imposed by the CWA.[68]

---

[63]  Bankr. D.I. No. 9650 (Ex. E to Motion, pp. 3-8) (App. Exh. A, A-137-142).

[64]  Bankr. D.I. No. 9650 (Ex. E to Motion, pp. 3-8) (App. Exh. A, A-137-142).

[65]  Bankr. D.I. No. 9650 (Ex. E to Motion) (App. Exh. A, A-135-183).

[66]  Bankr. D.I. No. 9650 (*see* Ex. E to Motion, p.3) (App. Exh. A, A-137).

[67]  Bankr. D.I. No. 9650 (Ex. E to Motion) (App. Exh. A, A-135-183).

[68]  In its motion, Kaiser pointed to Paragraph 6.B. of the Decree to support its argument that the Consent Decree applied. However, Paragraph 6.B. only describes limitations on the use of CERCLA orders and cost-recovery by the U.S., States, and Tribe actions regarding

25

Third, Paragraph 3 of the Consent Decree states that the Decree is only binding upon the U.S., the States, and a Native American Tribe, on the one hand, and Debtor (and its successors and assigns) on the other.[69] Nothing in the Decree purports to reach strangers to the Consent Decree proceeding, as Agha and MLCP were at the time.[70] In fact, the only place in the Decree in which third party rights are mentioned is Paragraph 25, which concerns third-party suits as to the Liquidated Sites only, and the definition of "Liquidated Sites" does not include Moss Landing.[71]

Fourth, Paragraph 7 of the Decree limits only government actions; it omits the only non-governmental party to the Decree from its coverage.[72] As with Paragraph 3, Paragraph 7 only involves Kaiser, the U.S., and States, and concerns causes of action traditionally used by such governmental entities in litigation. The statutory provisions for citizens to act under RCRA[73] and CWA[74] are distinct from those reference in the Consent Decree, thus the Consent Decree has no effect on MLCP.

---

the Additional Sites. Bankr. D.I. No. 9650 (Ex. E to Motion, ¶ 6) (App. Exh. A, A-22). Moss Landing has not plead a CERCLA cause of action, and the Decree in Paragraph 6 says nothing about the RCRA cause of action (42 U.S.C. § 6972(a)) or the CWA causes of action (33 U.S.C. §§ 1311 and 1342) that Moss Landing *has* pleaded in the First Amended Complaint.

[69]  Bankr. D.I. No. 9650 (*See* Ex. E to Motion, p.10) (App. Exh. A, A-144).

[70]  Bankr. D.I. No. 9650 (*See* Ex. E to Motion, p.10) (App. Exh. A, A-144).

[71]  Further, the term provides for traditional *CERCLA* contribution protection to Debtor from third party suits and, as noted, there is no CERCLA claim in Moss Landing's First Amended Complaint. Bankr. D.I. No. 9650 (Ex. 1 to Motion) (App. Exh. A, A-346-370).

[72]  Bankr. D.I. No. 9650 (*See* Ex. E to Motion, pp. 23-25) (App. Exh. A, A-157-159).

[73]  42 U.S.C. § 6972.

[74]  33 U.S.C. §§ 1311, 1342.

561047.1 8/15/08

## IV.    THIS COURT HAS JURISDICTION TO HEAR MOSS LANDING'S APPEAL AND REVERSE THE ERRONEOUS BANKRUPTCY COURT ORDER

### A.    This Court Has Jurisdiction To Hear This Appeal Pursuant To 11 U.S.C. § 158(a)(1) Because The Bankruptcy Order Was Final.

The March 27, 2008 Bankruptcy Court order from which Moss Landing appeals ("the Order") is "final" for purposes of this Court's appellate jurisdiction because it directs Moss Landing to dismiss its action in the Northern District of California against the reorganized debtor Kaiser (the "California Action"). The district court has jurisdiction to hear appeals from final orders of the bankruptcy court because Section 158(c)(2) provides that "an appeal under [this section] shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district court . . . ." 28 U.S.C. § 158(c)(2). As regards what constitutes a "final order," the Courts "have traditionally applied a relaxed standard of finality in bankruptcy cases" because of "pragmatic considerations unique to this area of the law." *Buncher v. Official Committee of Unsecured Creditors of Genfarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000).

In a bankruptcy case, an order may be immediately appealable if it "finally dispose[s] of discrete disputes within the larger case . . ." *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983). By holding that MLCP is subject to the plan injunction in the first place, the Bankruptcy Court has effectively determined that any claim MLCP may have is subject to the plan and its discharge. This erroneously assumes that MLCP received notice of Kaiser's confirmation, which is not true. These determinations having been made, the Bankruptcy Court has no further action to take unless MLCP challenges it by filing a claim.

Furthermore, even if MLCP were to file a claim in the bankruptcy case, the Order would still be "final" for purposes of appellate jurisdiction because, by expanding the scope of the

27

plan's injunction, the Order eliminates MLCP's RCRA claim, its primary cause of action against Kaiser. The California Action seeks an order under RCRA to require Kaiser to remediate the ongoing environmental contamination it created over 40 years of owning the property and bringing the two waste dumps into existence. This remedy is entirely unavailable in the Bankruptcy Court. *In re Torwico Electronics, Inc. (Torwico Electronics, Inc. v State of New Jersey, Dept. Environmental Protection),* 8 F.3d 146 (3d Cir. 1993) [holding that the attempt to "force a party to clean up a waste site which poses an ongoing hazard is not a 'claim' as defined by the Bankruptcy Code"]. By limiting MLCP's recovery to a "claim" in bankruptcy, *the Order has effectively eliminated MLCP's primary cause of action.* This makes the order "final" for purposes of Section 158 jurisdiction.

It is anticipated that Kaiser will argue that the Order was not final because the Bankruptcy Court did not entirely adjudicate the merits of MLCP's underlying claim. In the context of bankruptcy, however, an order need not adjudicate the entire conflict between the parties to be subject to appeal. In a case on point, *In re Saco Local,* the order appealed from determined only that a creditor's claim was entitled to a certain priority. *In re Saco Local Dev. Corp.,* 711 F.2d at 444. It did not adjudicate the amount owed on the claim, yet it was held to be "final" for purpose of appeal. *Id.*

Here, the Bankruptcy Court ruled that the California Action was subject to the Plan injunction, effectively eliminating MLCP's claim against Kaiser for remediation under RCRA. As a practical matter, the Order's direction to MLCP to dismiss the California Action is complete in itself as it requires no further action by the Court unless MLCP files a claim. Thus, while the Order did not decide the underlying merits of MLCP's claim, it clearly a "final" order and subject to appeal.

28

**B.     The Bankruptcy Order Is Final For Purpose Of Appeal Under The
         Collateral Order Doctrine.**

Because the effect of the Order is essentially to bar prosecution of MLCP's central claim

for relief pursuant to RCRA, the Order is also subject to appeal as a "final order" under the

"collateral order doctrine." Under this doctrine, appellate jurisdiction will lie for an order that

1) conclusively determines a disputed question that 2) resolves an important issue separate from

the merits of the action, and 3) is effectively unreviewable from the final judgment. Colliers on

Bankruptcy Volume 1, section 5.07[3], citing *Cohen v. Beneficial Industrial Loan Corp.*, 337

U.S. 541 (1949). The doctrine "is best understood not as an exception to the 'final decision' rule

[in 28 U.S.C. § 1291] but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop

Direct Inc.*, 511 U.S. 863, 868 (1994), quoting *Cohen*, 37 U.S. at 546.

This Court has jurisdiction under the collateral order doctrine because the Bankruptcy

Court Order satisfies all three criteria set out in *Cohen*. The Order "conclusively determined" a

disputed question because it necessarily included holdings about whether MLCP's claims were

subject to the injunction and plan in the bankruptcy proceeding.    Actually, the Order

conclusively settled two "disputed questions" - 1) whether MLCP is subject to the injunction at

all because of questions of notice and due process, and 2) whether, notwithstanding any issues of

notice, a private action under RCRA is barred by a bankruptcy-discharge injunction in the first

place. By ordering that the California Action be dismissed, the Bankruptcy Court ruled that the

plan injunction applies—thereby asserting its jurisdiction over the conflict.

Furthermore, by mandating that MLCP is limited to a 'claim' in bankruptcy, the Order

effectively eliminates MLCP's RCRA and CWA actions. *In re Torwico*, 8 F.3d at 150. These

issues are "separate" from the merits of MLCP's underlying claim against Kaiser for remediation

of ongoing contamination, because both questions must be decided before the underlying action can proceed.

In *In re Looney*, 823 F.2d 788, 790 (4th Cir. 1987), a creditor filed a motion for relief from the automatic stay affected by a debtor's filing for bankruptcy protection. The Bankruptcy Court ruled without a hearing that the stay should remain in effect until a specific date at which time a final ruling on the stay would be made. *Id.* The debtor unsuccessfully appealed to the District Court what was effectively an extension of the automatic stay, but the Fourth Circuit reversed. *Id.* at 792. Before ruling on the merits of the debtor's argument that the order could not issue without a hearing, the Court found that, even though the order was not "final" in any traditional sense, that it had jurisdiction under the collateral order rule because the Bankruptcy Court order "conclusively determined [the creditor's] statutory right to have the automatic stay lifted, unless the [debtor] showed a reasonable likelihood of prevailing . . ." *Id.* at 791. This determination, which had nothing to do with the merits of the creditor's claim, was sufficiently "conclusive" and "final" for purposes of the collateral order doctrine as enunciated in *Cohen.* *Id.*

If the order in *In re Looney* qualifies as "final" for purposes of jurisdiction under the collateral order doctrine, how much more so does the Order in this appeal. In *In re Looney*, the Bankruptcy Court's order did not touch upon the merits or viability of the creditor's claims. In this case, the Bankruptcy Court's order effectively disposed of MLCP's RCRA claim without any hearing on its merits. *In re Torwico*, 8 F.3d at 150.

Finally, no appeal from final judgment in the Bankruptcy Court can vindicate MLCP's RCRA rights because the RCRA rights cannot be presented in Bankruptcy Court. The Supreme Court has held that the third *Cohen* requirement is satisfied when the order at issue involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated

30

before trial." *Mason v. Massie*, 335 B.R. 362, 371 (N.D. Ohio), quoting *United States v. MacDonald*, 435 U.S. 850, 860 (1978). Under this clarified standard, satisfaction of this third *Cohen* requirement is especially plain because MLCP's right to pursue the RCRA action has already been "destroyed" long before any possible "trial" of its claims in the Bankruptcy Court. Thus, as in *Cohen* and *Looney*, the Order from which MLCP appeals is "final" for purposes of appellate jurisdiction.

31

## CONCLUSION

For all the foregoing reasons, the Bankruptcy Court's Order should be reversed and MLCP should be permitted to continue the California Action.

Mark Minuti (DE No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

-and-

Thomas H. Clarke, Jr. (Cal. Bar No. 47592)
**ROPERS, MAJESKI, KOHN & BENTLEY**
201 Spear Street, Suite 1000
San Francisco, CA 94105
(415) 543-4800

-and-

Wendy W. Smith (Cal Bar No. 133887)
**BINDER & MALTER, LLP**
2775 Park Avenue
Santa Clara, CA 95050
(408) 295-1700

*Attorneys for Moss Landing Commercial Park LLC*

Dated: August 15, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **KAISER ALUMINUM CORPORATION, a** | : | **Case No. 02-10429 (JKF)** |
| **Delaware Corporation, et al.,** | : | |
| | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | |

| | | |
|---|---|---|
| **MOSS LANDING COMMERCIAL PARK LLC, et** | : | |
| **al.,** | : | |
| | : | |
| **Appellant,** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No: 08-cv-00233 (JJF)** |
| **KAISER ALUMINUM CORPORATION AND** | : | |
| **KAISER ALUMINUM & CHEMICAL** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Appellees.** | : | |

## CERTIFICATE OF SERVICE

I, Mark Minuti, Esquire of Saul Ewing LLP hereby certify that on August 15, 2008, service

of the foregoing **Opening Brief of Appellant Moss Landing Commercial Park, LLC** was

made on the following parties in the manner indicated.

Daniel J. DeFranceschi, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
**(Via Hand Delivery)**

Gregory M. Gordon, Esquire
Daniel P. Winikka, Esquire
Jones Day
2727 North Harwood Street
Dallas, TX 75201
**(Via Federal Express)**

Mark Minuti (No. 2659)
**SAUL EWING LLP**
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

561047.1 8/15/08